[No. 5757.]

THE HUMPHREYS TUNNEL AND MINING COMPANY v. FRANK.

1. Pleadings—Construction—All the allegations of a pleading are to. be taken together, in determining the import of the several allegations.—(528)

The complaint alleged that plaintiff entered as a homestead under the act of congress certain lands described, 168 acres; that 60 acres thereof were meadows, lying upon either side of the stream and not requiring artificial irrigation; that the lands "are traversed by said Willow creek, and that by entering the same, plaintiff became entitled to the waters of said creek, flowing in its natural channel, undiminished in quantity, except as the same may have been appropriated by others prior to the appropriation of the same by plaintiff." Then followed an averment that for irrigating the parts of his lands not included in the meadows plaintiff diverted the waters of the stream by a ditch, and had continuously so used them, and had obtained a statutory decree therefor. Held that, construed as a whole, the plaintiff was not asserting merely the rights of a riparian owner at common law.—(527-529)

2. Water Courses—Pollution—A mill owner who, having acquired the right to water artificially produced in the development of a mine, uses it in concentrating ores, and then discharges the tailings and slime impregnated, with noxious and poisonous substances into a natural stream, to the injury of one who has a prior right to enjoy the waters of the stream for irrigating his lands, is, upon general principles and independent of any statute, liable in damages, where it appears that, by a slight expenditure of time and money, he may impound the tailings and waste upon his own premises.—(531)

3. **Principal and Agent—Liability of Agent for His Torts—** The agent who, in the execution of his agency, wrongfully injures a third person, is liable. The agency is no protection.—(531)

4. **Water Rights—Appropriation—**There may be a valid appropriation even after all the waters of the stream in its ordinary stage have been appropriated. Such last appropriation entitles the appropriator to the use of the water when not required by his seniors, as well as flood waters. And he will be as fully protected against the wrongful pollution of the stream as though he were the senior and only appropriator.—(532)

*Appeal from Costilla District Court* — Hon. Charles C. Holbrook, Judge.

Messrs. Thomas, Bryant & Malburn, for appellant.

Mr. Albert L. Moses, for appellee.

Mr. Justice Campbell delivered the opinion of the court:

In 1896 the plaintiff made an entry under the homestead laws of the United States upon 168 acres of land in Mineral county, patent title to which he afterwards obtained and still holds. Willow creek, a natural stream, flows through it. About sixty acres of it are natural meadow lands, lying upon either side of the stream, which, without artificial irrigation, yearly produce crops of hay as the result of the annual overflow of the waters of the stream. The remaining agricultural part of the tract is irrigated by water taken out of the stream through plaintiff's ditch, to which a decreed priority has been awarded, under the appropriate statutory proceedings, as of date July, 1895. Continually since plaintiff made entry, his lands have been irrigated by the two methods mentioned, one natural, the other artificial. Afterwards and about the year 1902 defendant began to operate its reduction mill for the concentration of ores containing lead and zinc as the

predominating minerals, but also carrying values in gold and silver. The mill was situate on the west branch of Willow creek about two miles north of plaintiff's ranch and about a mile and a half up the stream from the headgate of his ditch. In the process of concentrating ores large quantities of rock and waste matter escaped from defendant's mill, and were discharged into the creek in the form of poisonous tailings and slimes, and by the current were carried down the creek, and therefrom into plaintiff's ditch, upon his artificially irrigated lands, and upon the sixty acres of meadow land, when the annual overflow occurred, to such an extent that they have been covered and greatly injured. In other respects plaintiff has been injured; so much so that he has been obliged to remove to another tract of land, which he is attempting to bring under cultivation, and upon which he proposes to grow agricultural crops with his vested water rights; but, against his remonstrance and protest, defendant, notwithstanding the injuries which it has already inflicted, proposes hereafter, as before, to operate its mill and foul and pollute the waters of the stream, which, if persisted in, plaintiff says, will utterly destroy his premises. Material allegations of the complaint are denied in the answer and a number of separate defenses interposed, which are noticed in the opinion. The issue of damages was submitted to a jury which returned a verdict in plaintiff's favor for about one thousand dollars. The equitable issues were tried to the court, and findings were made in plaintiff's favor, and a permanent injunction was awarded restraining defendant from turning waste materials, and polluted waters, into the stream.

The discussion has taken a much wider range than the necessities of the case require. The principal defense is that in his complaint and evidence

plaintiff bases his right to recover solely on his riparian, ownership. Defendant's entire argument may be thus summed up: As the doctrine of riparian rights has been abrogated in Colorado, and as the common-law rule applicable to pollution of the waters of a natural stream is but a corollary of the doctrine of riparian rights, the latter falls with the former. Manifestly if defendant's premise as to the basis of plaintiff's rights is wrong, his conclusion is wrong. This court has repeatedly declared that, as between a riparian owner, and an appropriator of the waters of a natural stream, the doctrine of continuous flow has never been recognized or enforced in this jurisdiction. Whether the riparian owner as against others has still some rights the law recognizes, and if so, what they are, the exigencies of the pending case do not require us to determine; for, as we shall presently see, defendant is radically wrong in saying that plaintiff relies upon riparian ownership, or the doctrine of continuous flow. If he did, and what, if any, his rights are, for the reason already given, we withhold expression of opinion. Plaintiff expressly disclaims reliance on the doctrine of riparian rights, and claims nothing from the circumstance that his lands border on a natural stream, except that, by reason of its location with reference to the stream, his meadow lands have become entitled to the use of its overflow waters, which the law safeguards. It is the third paragraph of the complaint on which defendant predicates the contention we are now considering. It reads:

"That the said lands are traversed by the said Willow Creek and that upon entering the same the plaintiff became entitled to the use and benefit of the waters of said creek, following in its natural channel, and undiminished in quality or quantity, except as the same may have been diverted or appropriated

by others under the laws of Colorado prior to the appropriation of the same by the plaintiff, as aforesaid.''

Plaintiff says his object in inserting the paragraph was to show to the court that his lands were of such a character and so situated with reference to a natural stream as to bring them within the purview of sec. 3165, Rev. Stats. 1908, which entitles lands of this description to the use of its waters for the purpose of irrigation. Such may have been the intention of plaintiff. Whether there was any necessity for its insertion is not now important. It is, however, directly followed in paragraph 4, by the allegation that for irrigating these lands thus described, plaintiff diverted the waters of the stream, and has seasonably and continuously since that time, so used them, subject only to the rights of prior appropriators, and has also obtained a statutory decree therefor. It is obvious also that paragraph 3 may with entire propriety be read in connection with paragraph 10, which sets forth, as recited in the foregoing statement, that sixty acres of the tract are meadow lands and have annually been self-irrigated as the result of the overflow of the stream. Sec. 3176, Rev. Stats. 1908, declares that a land owner who has thus enjoyed the use of water upon his premises by such natural overflow may, if from any cause such irrigation in whole or in part ceases, have the right to construct a ditch for irrigating his meadow and take water from such stream, and the date of the priority of his ditch shall relate back to the time when he first occupied and used his land as meadow land. The right way to construe a pleading is not to select a single paragraph and determine its meaning, without reference to the context, but to take all the allegations and consider them together. By so doing here it clearly appears that paragraph 3

was not intended to set up a claim of right in plaintiff as a riparian owner. On the contrary, the complaint shows that plaintiff is claiming ownership of a water right for part of his lands as the result of a diversion through a constructed ditch and subsequent beneficial application, and of another and distinct appropriation for his meadow lands, which the statute itself gives him without any affirmative act of his own in withdrawing water from the stream. Other allegations of the complaint charge that it is these rights thus lawfully acquired and possessed which defendant by his wrongful acts has practically destroyed. We then have this case as made by the pleadings, which is abundantly sustained by the evidence: A mill owner who has acquired the right to the use of waters artificially developed in the working of mines, uses it for milling purposes in concentrating ores, and after it has become impregnated with poisonous and noxious substances discharges it, in the form of tailings and slimes, into the channel of a natural stream to the injury of a land owner who has made an appropriation of the waters of the stream, for irrigating purposes, long before the rights, if any, of the mill owner attached. From early times in the legislation of this state we have had a statute which prohibits any person from flooding the property of another by water or washing down the tailings of his or their sluice upon the property of other persons, and it is made the duty of every miner to take care of his own tailings upon his own property or become responsible for all damages that may arise therefrom.—Sec. 4214, Rev. Stats. 1908; Rev. Stats. 1868, p. 466, sec. 8. It may be said this statute refers to placer mining. Whether it applies to the present case we need not say. Upon general principles of law it is so entirely clear that defendant is liable in damages for this pollution of

the stream which has injured plaintiff, that we do not cite authorities or deem it necessary to argue such a self-evident proposition. In *Suffolk G. M. & M. Co. v. San Miguel M. & M. Co.*, 9 Col. App. 407, our court of appeals has gone much further than we have here in protecting a natural stream from pollution.

Defendant invokes another principle, which he says some of the authorities establish, that where an industry, like that of operating a mill for concentrating ores, is absolutely dependent upon the right to discharge waste material into the waters of a natural stream, one who has made an appropriation therefrom for irrigation, whether prior or subsequent to the beginning of the operation of the mill, gets only a qualified right and takes subject to the right of the mill owner to foul the stream. No such case is presented by the evidence, and we are not required to consider it. The court found on uncontradicted evidence, even from the admission of its president, that it was entirely practical and feasible for defendant, with a comparatively small expenditure and within a few weeks' time, to take care of the tailings and waste material upon its own premises. It should do so and not cause needless injury to another important industry.

Another argument, possibly the same one elsewhere advanced, but in another form, is that the waters which defendant uses in operating its mill are artificially produced as the result of mining operations, which the mine owners give to defendant for its milling purposes; and since it is the owner, it may make such use of the waters as it sees fit, and, after they perform their function in the process of milling and have become impregnated with poisonous waste matter, they may be, in such form, turned into the channel of the stream by defendant at its pleasure, and without incurring any liability for consequential

damages to others. The fact that defendant in operating the mill uses waters which are not a part of the natural flow of a stream does not give it the absolute right to discharge into that stream the waste water mixed with hurtful slimes, or absolve it from liability for resulting injuries to third persons who have lawfully acquired prior rights to use the waters thereof for any beneficial purpose.

Another contention is that defendant, in operating his mill, is but the agent of the mine owners whose ores it treats under contract, therefore they, and not it, should have been sued. The mine owners are not parties to this action and we are not passing upon their rights. Defendant cannot escape liability, if its own act has contributed to plaintiff's injury, even if others have participated in the wrong.

Another objection to plaintiff's recovery interposed in various ways and at divers times, is that the natural waters of the stream were appropriated up to its full capacity, during the ordinary flow, by other appropriators, whose rights attached before plaintiff's appropriation was made, and as the prior appropriations exhausted the entire ordinary natural flow, there was no water left in the stream with which plaintiff could irrigate his lands; therefore he could not have sustained any damage as the result of defendant's acts, because he had no right that was thereby infringed. This is a fallacious contention. As we have already seen, plaintiff acquired valid rights as the result of his direct appropriation from the stream, and to the overflow of the stream for his meadow lands, and these rights were vested before defendant began the construction or operation of its mill. Plaintiff's rights were, of course, paramount to any rights defendant had in the waters of the stream. Indeed defendant claims no rights whatever to the natural waters, but only the right to discharge pol-

luted water into the stream. Plaintiff's rights were subject only to the rights acquired by prior appropriators of the water for some useful purpose and his right, as well as theirs, as against defendant, is to have the natural waters and all accretions come down the natural channel undiminished in quality as well as quantity. Though other appropriations, to the full capacity of the stream during its ordinary flow, were made before plaintiff's rights accrued, this does not prevent him from building a ditch and diverting and using its waters whenever his seniors do not need it. Floods often occur and the natural flow of the stream is thus augmented. No appropriator uses water all the time. It is well known that many streams of this state are over-appropriated, yet appropriators whose rights accrue after the ordinary flow is fully appropriated, have, nevertheless, acquired valuable rights and often enjoy the use of water for their lands, which rights the law protects against trespasses of others. When the demands of the senior upon the stream cease the rights of the junior attach, and, as against a wrong-doer like the defendant, the junior is entitled to protect the stream from pollution, the same as if he were the senior and only appropriator. If the acts of defendant interfere with such rights of plaintiff, as they have, defendant must be held responsible for the resulting injury.

Defendant raises and argues the question whether, in times of scarcity of water, the state constitution gives a priority to agricultural claimants over those claiming for mining. No such question is involved in this case. Defendant has acquired no rights to the waters of a natural stream either for mining or any other purpose, while plaintiff owns a decreed priority to use water for irrigation. There

is no question in this case between his rights and those of an appropriator for any other purpose. The vital question, as we have elsewhere determined, is whether defendant, who has no rights at all in the waters of a natural stream, may rightfully pollute it to the injury of a land owner who has a valid right to use its waters for agricultural purposes.

The jury were fully justified in returning the verdict they did, and the court's findings and decree upon the equitable branch of the case are clearly right. The judgment is therefore affirmed.

*Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE MUSSER concur.

Opinion announced November 1, A. D. 1909; rehearing denied December 6, A. D. 1909.