No. 27968

**Colorado River Water Conservation District v. Vidler Tunnel Water Company, Applicant, State of Colorado, Department of Natural Resources and Lee Enewold, Division Engineer, Water Division No. 5**

(594 P.2d 566)

Decided April 23, 1979.          Rehearing denied June 4, 1979.

414

Delaney & Balcomb, Kenneth Balcomb, Scott Balcomb, for opponent-appellant.

Holme, Roberts & Owen, Peter H. Holme, Jr., Glenn E. Porzak, for applicant-appellee.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, Gregory J. Hobbs, Jr., First Assistant, James E. Thompson, Assistant, for appellee.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

The appellant Colorado River Water Conservation District (District) here seeks reversal of the trial court's conditional water storage decree entered under the Water Right Determination and Administration Act of 1969. Section 37-92-101, *et seq.,* C.R.S. 1973. The court awarded a conditional water storage right, with an appropriation date of August 1, 1973, to the appellee Vidler Tunnel Water Company (Vidler) for storage of 156,238 acre feet of water in its proposed Sheephorn Reservoir. The court decreed that, should appropriation be effected, the water be used for municipal, industrial, domestic, recreational, agricultural, irrigation, and electrical energy generation purposes. The right, subject to the earlier priority rights of others, was awarded on the condition that the water stored be applied to beneficial use within a reasonable time. We affirm the award of this conditional water storage right in part and reverse it in part.

Vidler is an established Colorado corporation organized to supply and deal in water for many different purposes. It owns various water rights, a water collection system, and a transmountain diversion tunnel. In March, 1973, Vidler began to formulate plans for the Sheephorn Reservoir, a part of a larger project known as the Sheephorn Project. The initial planning phase lasted until mid-May, 1973. During this time a consulting water engineer made on-site inspections and stated tentative opinions that the proposed reservoir site was feasible and that sufficient water was available to accomplish Vidler's purposes. Subsequently Vidler decided to proceed with the project.

At a cost of approximately $122,000, Vidler employed professional engineers, aerial photographers, surveyors, and attorneys to define the size and location of the reservoir and to determine the availability of water. On August 1, 1973, a surveyor commenced a field survey of the reservoir site. Based upon this field work, the survey of the high water line and the final topographic maps of Sheephorn Reservoir were completed.

In November, 1974, engineers were retained to design hydro-electric and power facilities for the reservoir and to apply for a Federal Power Commission (F.P.C.) preliminary permit for the overall project, including the Sheephorn Reservoir. This application was filed on November 26, 1975. It is currently pending before the F.P.C.

Vidler obtained financing for its expenditures through the hearing date, but the evidence did not establish future availability of financing.

The proposed Sheephorn Reservoir, with an active capacity of 152,053 acre feet and dead storage of 5,185 acre feet, is to be created on the main stem of the Colorado River in Grand County, Colorado. Testimony established that the annual firm yield will be approximately 90,000 acre feet.

On September 26, 1975, Vidler granted the City of Golden an option to purchase 2,000 acre feet of Sheephorn Reservoir water together with a right of first refusal for an additional 3,000 acre feet, all conditioned on

the success of the project. Vidler intends to use about 2,000 acre feet of water from Sheephorn Reservoir to irrigate lands it owns or leases.

Vidler plans to sell the remainder of the water from the project. It has held preliminary discussions with the cities of Denver, Aurora, and Westminster, and with Grand County, and the municipal subdistrict of the Northern Colorado Water Conservancy District. However, no contracts for use of water have been entered into with any of those entities.

An extensive report, prepared by the Denver Water Department under the direction of the Denver Regional Council of Governments, projects that the future new water requirements of the cities in the Denver metropolitan area will be substantial. However, several of these municipalities have been attempting to provide for their future water needs through other sources. The evidence also disclosed that Vidler probably could sell water to entities other than those described in the report or with whom it has had preliminary discussions.

## I.

A conditional water right is the "right to perfect a water right with a certain priority upon the completion with reasonable diligence of the appropriation upon which such water right is to be based." Section 37-92-103(6), C.R.S. 1973. A conditional water decree determines that the first steps toward appropriating a certain amount of water have been taken and the decree establishes the date when this occurred. Section 37-92-305(1), C.R.S. 1973; *Four Counties Water Users Ass'n v. Colo. River Water Conservation Dist.*, 159 Colo. 499, 414 P.2d 469 (1966). The burden of proving these elements is upon the applicant for the conditional water right. Section 37-92-304(3), C.R.S. 1973. The priority date of the completed appropriation relates back to the date established by the conditional decree so long as the applicant has proceeded with due diligence thereafter to perfect the appropriation. Section 37-92-305(1). *Rocky Mountain Power Co. v. White River Elec. Ass'n,* 151 Colo. 45, 376 P.2d 158 (1962).

To initiate an appropriation, two elements — an intent and an act — must co-exist. *Elk-Rifle Water Co. v. Templeton,* 173 Colo. 438, 484 P.2d 1211 (1971). First, the applicant must have an *intent* to take the water and put it to beneficial use.[1] Secondly, the applicant must demonstrate this intent by an open physical *act* sufficient to constitute notice to third parties. *Twin Lakes Reservoir & Canal Co. v. City of Aspen,* 192 Colo. 209, 557 P.2d 825 (1976); *Central Colo. Water Conservation Dist. v. Denver,* 189 Colo. 272, 539 P.2d 1270 (1975); *Four Counties Water Users Ass'n v. Colo. River Water Conservation*

---

[1] A beneficial use is "[t]he use of that amount of water that is reasonable and appropriate under reasonably efficient practices to accomplish without waste the purpose for which the appropriation is lawfully made . . . ." Section 37-92-103(4), C.R.S. 1973.

*Dist., supra; Fruitland Irrigation Co. v. Kruemling,* 62 Colo. 160, 162 P. 161 (1916). The facts of each case must be considered on an *ad hoc* basis to determine whether an appropriation has been initiated. *Elk-Rifle Water Co. v. Templeton, supra.*

The District does not here contest the trial court's finding that an open physical act of appropriation took place on August 1, 1973, when professional surveyors commenced a detailed field survey of the Sheephorn Reservoir. However, the District asserts that the award of the conditional decree was erroneous, for the reason that Vidler failed to prove the requisite *intent* to take the water and put it to beneficial use. Specifically the District contends that Vidler offered insufficient proof to establish that the amount of water claimed was reasonable and appropriate to accomplish the purposes of the appropriation. The District claims that whether the water is needed or will actually be used by the municipalities is purely speculative and conjectural. Thus the District contends that the trial court erred in finding that Vidler had the intent to appropriate. Our review of the record has persuaded us that the District's contention is correct in part.

■ We hold that the evidence presented regarding future needs and uses of the water by the municipalities contacted by Vidler falls short of what is necessary to indicate an intent to appropriate. Vidler has no firm contractual commitment from any municipality to use any of the water. Even the City of Golden has not committed itself beyond an option which it may choose not to exercise. The mere negotiations with other municipalities clearly do not rise to the level of definite commitment for use required to prove the intent here required.

■ Our constitution guarantees a right to appropriate, not a right to speculate. The right to appropriate is for *use,* not merely for profit. As we read our constitution and statutes, they give no one the right to preempt the development potential of water for the anticipated future use of *others* not in privity of contract, or in any agency relationship, with the developer regarding that use. To recognize conditional decrees grounded on no interest beyond a desire to obtain water for sale would — as a practical matter — discourage those who have need and use for the water from developing it. Moreover, such a rule would encourage those with vast monetary resources to monopolize, for personal profit rather than for beneficial use, whatever unappropriated water remains. Twenty-five years ago this Court emphatically rejected the "claim that mere speculators, not intending themselves to appropriate and carry water to a beneficial use or representing others so intending, can by survey, plat, and token construction compel subsequent bona fide appropriators to pay them tribute by purchasing their claims in order to acquire a right guaranteed them by our Constitution." *Denver v. Northern Colorado Water Dist.,* 130 Colo. 375, 408, 276 P.2d 992, 1009 (1954).

While Vidler's efforts possibly went beyond mere speculation,[2] there was no sufficient evidence that it represented anyone committed to actual beneficial use of the water not intended for use on its own land. Indeed, there is not even evidence of firm sale arrangements. In essence, water rights are sought here on the assumption that growing population will produce a general need for more water in the future. But Vidler has no contract or agency relationship justifying its claim to represent those whose future needs are asserted.

■ For the foregoing reasons we hold that the trial court erred in awarding a conditional decree to the water claimed for use by municipalities. However, Vidler presented sufficient evidence to demonstrate its intent to appropriate water for use on land it owns or holds under lease. Thus the trial court was correct in awarding the conditional decree for that portion of the claimed water to be used on land Vidler owns or leases. It was incorrect as to the remainder of the conditional decree.

II.

The District contends that Vidler failed to show that unappropriated water was actually available for appropriation, and therefore, the conditional decree should not have been granted. Alternatively, the District asserts that even if the trial court was correct in its conclusion that only a good faith belief in the availability of water is necessary, the evidence does not support the trial court's finding that Vidler had such a good faith belief.

■ A showing of actual, certain availability, or of a good faith belief in the availability, of unappropriated water is not a prerequisite for an award of a *conditional* right to waters from surface streams. An applicant for a conditional decree may know that at the time he applies no water is available for appropriation. Yet he may anticipate that by the time his proposed diversion project is completed unappropriated water will have become available. By that time, senior holders of conditional water rights may have lost their conditional rights for failure to use reasonable diligence in applying the water to a beneficial use. Sections 37-92-301(4) and 37-92-103(1), C.R.S. 1973. Or, senior holders of absolute water rights may have abandoned their rights by permanently discontinuing their use of the water. Section 37-92-103(2), C.R.S. 1973; *Rocky Mountain Power Co. v. White River Association,* 151 Colo. 45, 376 P.2d 158 (1962).

Furthermore, even though the natural flow of the stream may be appropriated to its full capacity by rights which accrued prior to Vidler's conditional right, water may still be available for appropriation from the stream's overflow. Moreover, there may be times when Vidler can divert

---

[2] *Cf. Bunger v. Uncompahgre Valley Water Users' Ass'n,* 192 Colo. 159, 557 P.2d 389 (1976).

water because the senior holders do not need and cannot use it. We recognized as early as 1909:

"Floods often occur and the natural flow of the stream is thus augmented. No appropriator uses water all the time. It is well known that many streams of this state are over-appropriated yet appropriators whose rights accrue after the ordinary flow is fully appropriated, have, nevertheless, acquired valuable rights and often enjoy the use of water for their lands, which rights the law protects against trespasses of others . . . ." *Humphreys Co. v. Frank,* 46 Colo. 524, 532, 105 P. 1093, 1096 (1909).

Because streams are subject to seasonal recharge and the diversions by junior appropriators are regulated seasonally, no long-range harm to senior appropriators can result from over-appropriation. *Fundingsland v. Ground Water Commission,* 171 Colo. 487, 468 P.2d 835 (1970).

Accordingly, the trial court's award of the conditional water storage right is affirmed insofar as it affects water to be used on the appellee's owned or leased land, and reversed in all other respects.

MR. JUSTICE PRINGLE does not participate.