JUSTICE HOOD delivered the Opinion of the Court.
¶ 1 About a decade ago, Front Range Resources, LLC, a private company that owns or manages various water rights, applied for a replacement plan in the Lost Creek Designated Ground Water Basin. A replacement plan allows an applicant to withdraw designated ground water from an alluvial aquifer where no ground water is available for appropriation by replacing the withdrawn ground water with other sources of water. Under the plan, Front Range sought to divert water from its existing water rights (including some rights it had in the South Platte River) to recharge the Lost Creek Basin's alluvial aquifer. It then planned to withdraw the recharged water by increasing the use of its existing wells and by constructing new wells.
¶ 2 Defendants (parties that believed their water rights would be impaired by the plan) objected to Front Range's replacement plan, and the Ground Water Commission ultimately dismissed Front Range's application with prejudice. This allowed Front Range to appeal to the district court. Meanwhile, Front Range and the City of Aurora entered into an option contract for Aurora to purchase some or all of the replacement-plan water upon the replacement plan's approval.
¶ 3 On appeal, the district court rejected Front Range's use of water rights in the South Platte River in the replacement plan. It further found the replacement plan involved new appropriations and changes of water rights, triggering the anti-speculation doctrine. The anti-speculation doctrine prohibits changes of water rights or new appropriations based on a speculative sale or where an applicant has not demonstrated a specific plan and intent to put the water to beneficial use. In granting summary judgment against Front Range, the district court concluded Front Range's planned use of the replacement-plan water (including its option contract with Aurora) violated the anti-speculation doctrine. Some of the Defendants then pursued attorney fees, arguing Front Range's claims lacked substantial justification. But the district court denied their motion.
*809 ¶ 4 We hold that the anti-speculation doctrine applies to replacement plans involving new appropriations or changes to designated ground water rights. Because Front Range could not demonstrate that it or Aurora would put the replacement-plan water to beneficial use, the district court did not err in granting Defendants' motion for summary judgment. We further conclude the district court did not abuse its discretion in denying Defendants' motion for attorney fees.
¶ 5 Thus, we affirm.
I. Facts and Procedural History
¶ 6 In 2008, Front Range Resources, LLC ("Front Range") applied for a replacement plan in the Lost Creek Designated Ground Water Basin with the Colorado Ground Water Commission ("the Commission"). Under the plan, Front Range proposed to divert water from its existing water rights (including rights it had in the South Platte River), recharge the Lost Creek Basin Alluvial Aquifer, and then recover the recharged water within ten years through increased use of Front Range's existing wells and by constructing thirty-one new, large-capacity wells.
¶ 7 The Defendants objected, and the Commission assigned a hearing officer to review the matter. The hearing officer dismissed Front Range's South Platte Water Rights from being used as replacement sources in the plan. The parties then stipulated to dismiss the application with prejudice, thus allowing Front Range to file a de novo appeal with the district court under section 37-90-115, C.R.S. (2017).
¶ 8 Front Range simultaneously entered into an option contract with the City of Aurora, under which Front Range granted Aurora the option to purchase some or all of the replacement water under the proposed replacement plan.
¶ 9 In the district court, the Defendants filed a motion for a determination of a question of law and partial summary judgment regarding whether the South Platte Water Rights could be used as a source of replacement water in the plan. Finding in the Defendants' favor, the district court, like the hearing officer, concluded the South Platte Water Rights could not be used as a source of replacement water because those rights were not decreed for replacement use in the Lost Creek Basin.
¶ 10 Defendants then moved for summary judgment to dismiss the replacement plan, arguing it violated the anti-speculation doctrine. Front Range countered that the anti-speculation doctrine didn't apply because its replacement plan involved neither new appropriations nor changes of water rights. But if the doctrine did apply, the argument went, then Front Range asserted it had shown a specific plan and intent to beneficially use replacement-plan water through its option contract with Aurora and for use in a planned unit development called the Pioneer Development on land Front Range owned.
¶ 11 Relying on language in Front Range's proposed decree-which included modifying its existing wells in the Lost Creek Basin to provide for increased use and constructing new wells in the Basin to withdraw the recharged water-the district court concluded the replacement plan involved new appropriations and changes of water rights. So, it held the anti-speculation doctrine applied.
¶ 12 Further, the district court determined Front Range's replacement plan violated the anti-speculation doctrine's beneficial use requirement. Specifically, the district court observed that because Aurora alone had the discretion to purchase replacement-plan water, the option contract did not evince any actual commitment to beneficially use the plan water. Similarly, the court concluded Front Range's evidence regarding its need for water in the Pioneer Development didn't satisfy the anti-speculation doctrine because it failed to show how replacement-plan water would be beneficially used there. Thus, it granted summary judgment in Defendants' favor. Front Range later filed a motion for reconsideration on anti-speculation, or in the alternative, to amend its application, which the district court denied.
¶ 13 Some of the Defendants moved for attorney fees, arguing Front Range's replacement-plan application lacked substantial justification.[1] In denying the attorney-fees *810 motion, the district court observed that this case involved complex legal issues and concluded that Front Range's claims did not lack substantial justification.
¶ 14 Front Range appealed to us, arguing the district court erred in its holdings about the anti-speculation doctrine and the South Platte Water Rights. Contending the district court erred in denying them attorney fees, some of the Defendants[2] cross-appealed on this issue.[3]
II. Standard of Review
¶ 15 We review legal questions de novo. See Burlington Ditch Reservoir & Land Co. v. Metro Wastewater Reclamation Dist., 256 P.3d 645, 661 (Colo. 2011). We also review a district court's grant of summary judgment de novo. Burton v. Colo. Access, 2018 CO 11, ¶ 19, ---P.3d ----. Finally, we review a district court's denial of attorney fees for abuse of discretion. See City of Aurora ex rel. Util. Enter. v. Colo. State Eng'r, 105 P.3d 595, 618 (Colo. 2005). "[A] trial court does not abuse its discretion unless its ruling is manifestly arbitrary, unreasonable, or unfair," or "it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Murray v. Just In Case Bus. Lighthouse, LLC, 2016 CO 47M, ¶¶ 16, 32, 374 P.3d 443, 450, 453 (quotations and citations omitted).
III. Analysis
¶ 16 We address the issues this case presents in two parts. First, we consider whether the anti-speculation doctrine applies to the replacement plan and, if it does, whether the plan violates the doctrine. We conclude the anti-speculation doctrine applies and the replacement plan violates the doctrine. Second, we address whether Defendants should receive attorney fees. We conclude the district court did not abuse its discretion in denying them fees.
A. The Anti-Speculation Doctrine
¶ 17 Front Range argues the district court erred by concluding that the anti-speculation doctrine applies to its replacement plan. But even if the doctrine does apply, Front Range contends the district court erred by determining the replacement plan violated the anti-speculation doctrine. We disagree in both respects. We first address our precedent on the anti-speculation doctrine and why it applies to Front Range's replacement plan. Then, we turn to the issue of whether Front Range's proposed uses for the plan water were speculative.
1. The Anti-Speculation Doctrine Applies to Front Range's Replacement Plan
¶ 18 As discussed above, Front Range claims the district court erred by determining that the anti-speculation doctrine applies to its replacement plan. Specifically, Front Range asserts the replacement plan does not involve new appropriations or changes of water rights because the plan would merely *811 operate to divert water from Front Range's existing rights, recharge the water in the Basin, then withdraw the water it recharges. In essence, water is water. As long as it all levels out in the end, there should be no problem. Defendants disagree. They maintain that Front Range's replacement plan involves new appropriations and changes of water rights, triggering the anti-speculation doctrine. So, our answer hinges on the anti-speculation doctrine's reach.
¶ 19 In Colorado Water Conservation District v. Vidler Tunnel Water Co., this court first articulated the anti-speculation doctrine. 197 Colo. 413, 594 P.2d 566 (1979). There, we held, "Our constitution guarantees a right to appropriate, not a right to speculate. The right to appropriate is for [u]se, not merely for profit." Id. at 568. In Vidler, we rejected as too speculative a company's plans to divert and store water to eventually sell to municipalities, because the company could not show any evidence of firm sale arrangements with the municipalities or other potential end-users. Id. at 567-68.
¶ 20 After Vidler, the General Assembly codified the anti-speculation doctrine, in relevant part, as follows:
[N]o appropriation of water, either absolute or conditional, shall be held to occur when the proposed appropriation is based upon the speculative sale or transfer of the appropriative rights to persons not parties to the proposed appropriation, as evidenced by either of the following:
....
(II) The purported appropriator of record does not have a specific plan and intent to divert, store, or otherwise capture, possess, and control a specific quantity of water for specific beneficial uses.
§ 37-92-103(3)(a), C.R.S. (2017).
¶ 21 And though we first announced the anti-speculation doctrine in the surface-water-rights context, see Vidler, 594 P.2d at 568-69, this court has since extended the anti-speculation doctrine to other situations. In Jaeger v. Colorado Ground Water Commission, for example, we held that the anti-speculation doctrine applies to appropriations of designated ground water. 746 P.2d 515, 516 (Colo. 1987). There, we noted the Colorado Ground Water Management Act governs the appropriation and administration of designated ground water through a modified version of the prior appropriation doctrine. Id. at 519. Under the Management Act, this doctrine seeks to (1) promote full economic development of designated ground water and (2) "restrict appropriative rights to amounts that will prevent unreasonable aquifer depletion." Id. at 519-20. In holding the anti-speculation doctrine applies to designated ground water, we observed a harmony between the doctrine and the Management Act's goals: "[T]he anti-speculation doctrine was developed to encourage full utilization of water resources by making water available to those with a genuine, immediate use for the water... [and it] works to supplement the statutory permit system and to encourage the fullest use of designated ground water resources." Id. at 523 (emphasis added).
¶ 22 This court has also applied the anti-speculation doctrine to changes of water rights. High Plains A&M, LLC v. Se. Colo. Water Conservancy Dist., 120 P.3d 710, 714 (Colo. 2005). In High Plains, a private water-investment company filed applications to change water rights, in both place and type of use, for shares of water the company had purchased. Id. at 715. But at the time it filed its applications, the company did not have agreements with any persons or entities that would put the changed water rights to beneficial use. Id. at 716. A number of objectors opposed the company's change application, arguing it violated the anti-speculation doctrine. Id. The water court granted the objectors summary judgment, and the company appealed, arguing the anti-speculation doctrine does not apply to changes of previously decreed water rights. Id. We affirmed, holding, "as a basic predicate of an application for a decree changing the type and place of use, that the applicant will sufficiently demonstrate an actual beneficial use to be made at an identified location or locations under the change decree, if issued." Id. at 714.
¶ 23 Here, the district court concluded that the anti-speculation doctrine applies because Front Range's proposed decree for the replacement plan requests increased use of its existing wells and construction of thirty-one new, large-capacity wells in the Basin. Further, *812 Defendants point out that Front Range actually gave notice at the Commission level that the plan involved new appropriations, and that Front Range's proposed decree appeared to concede that the anti-speculation doctrine applies. Indeed, Front Range's notice at the Commission level provided, "Applicant is hereby requesting the approval of a replacement plan authorizing new appropriations of water from the alluvial aquifer of the Lost Creek Basin and issuance of new large capacity well permits for the withdrawal of water associated with the new appropriations." And its proposed decree requested a priority date of September 17, 2008, and even contained a section labeled "Anti-Speculation Doctrine" that discussed how the replacement plan was not speculative.
¶ 24 Undaunted, Front Range nonetheless contends that its request for increased use of existing wells and construction of new wells does not constitute a new appropriation or change of water rights triggering the anti-speculation doctrine, because it merely seeks to withdraw recharged water from the Basin that it has diverted there through its existing water rights. Again, water is water. Moreover, it stresses that it abandoned its claim for a priority date in the district court, further evincing the replacement plan involves no new appropriations.
¶ 25 We disagree with Front Range. The replacement plan amounts to a new appropriation triggering the anti-speculation doctrine, because of its request for the increased use of Front Range's existing wells and the proposed construction of thirty-one new, large-capacity wells. Under the Rules and Regulations for the Management and Control of Designated Ground Water ("the Ground Water Rules"), the Lost Creek Basin Alluvial Aquifer "is determined to be overappropriated and, therefore, no new large capacity well permits shall be granted in the Alluvial Aquifer unless a replacement plan is approved by the Commission in accordance with Rule 5.6." Ground Water Comm'n, 2 Colo. Code Regs. 410-1:5.2.5.2 (2017). Ground Water Rule 5.6 provides, in relevant part, the following: "New appropriations of designated ground water from aquifers which are otherwise overappropriated... may be allowed pursuant to a detailed replacement plan." Ground Water Comm'n, 2 Colo. Code Regs. 410-1:5.6.1 (2017) (emphasis added). In other words, once a designated-ground-water aquifer becomes overappropriated, a party seeking new appropriations from it may do so only via an approved replacement plan. It follows, then, that Front Range's replacement plan involves new appropriations of designated ground water-which trigger the anti-speculation doctrine, Jaeger, 746 P.2d at 516. Otherwise, why would Front Range need a replacement plan in the first place?
¶ 26 Moreover, the plan's proposal to increase the amount of water pumped through Front Range's existing wells and to build thirty-one new wells fits squarely within the Ground Water Rule's change definition: " 'Change of Water Right' means a change in acreage served, volume of appropriation, pumping rate, well location, place, time or type of use by any water right, either conditional or final, or any combination of these changes including commingling of waters under such water rights." Ground Water Comm'n, 2 Colo. Code Regs. 410-1:4.2.8 (2017). Front Range stresses that it has changed the water rights for its existing wells for use in the replacement plan, meaning the replacement plan does not change any of its water rights. But this doesn't account for other changes proposed under the replacement plan, like that it seeks to build thirty-one new wells or (as Front Range's proposed decree puts it) that its existing well permits "shall be amended to allow withdrawals of water recharged" under the plan. (Emphasis added.) Thus, we agree with the district court that the replacement plan also involves changes of water rights triggering the anti-speculation doctrine. See High Plains, 120 P.3d at 714.
¶ 27 Because the replacement plan at issue here involves new appropriations or changes of water rights of designated ground water, the anti-speculation doctrine applies.[4] This leaves the question of whether the district court erred by concluding the replacement plan violates the anti-speculation doctrine. We turn to that question now.
*813 2. The Replacement Plan Violates the Anti-Speculation Doctrine
¶ 28 Front Range must prove that its replacement plan does not violate the anti-speculation doctrine. Front Range asserts it has shown a specific plan and intent to beneficially use replacement-plan water in two different ways.[5] First, it points to its option contract with Aurora. Second, Front Range argues it produced evidence of a specific plan and intent to beneficially use replacement water on land it owns called the Pioneer Development. Finding neither argument persuasive, we affirm the district court on this issue as well.
¶ 29 Turning first to the Aurora option contract, we note Vidler also involved an option contract. 594 P.2d at 568 ("As we read our constitution and statutes, they give no one the right to preempt the development potential of water for the anticipated future use of [o]thers not in privity of contract, or in any agency relationship, with the developer regarding that use." (emphasis added) ). There, a company sought to develop a water-storage and diversion project to sell water to municipalities on the Front Range. Id. at 567. It had no firm contracts in place, but it had entered into an option contract for Golden to purchase some of the water. Id. The company also presented evidence that it had discussions with other potential end-users and an extensive report detailing future need for the Denver metro area. Id. The Vidler court rejected the company's plan, reasoning it did not provide enough evidence demonstrating intent to appropriate. Id. at 568. "Vidler has no firm contractual commitment from any municipality to use any of the water. Even the City of Golden has not committed itself beyond an option which it may choose not to exercise." Id. (emphases added). The court observed that the company's "efforts possibly went beyond mere speculation," but ultimately concluded the application was too speculative because there was "not even evidence of firm sale arrangements." Id. at 569.
¶ 30 And our cases post- Vidler have continued to emphasize the importance of having a contract with end-users when water is appropriated for sale. E.g., Upper Yampa Water Conservancy Dist. v. Dequine Family L.L.C., 249 P.3d 794, 798 (Colo. 2011) (noting "that a conditional appropriation cannot be based on a sale or transfer of appropriative rights, notwithstanding the existence of firm contractual commitments, in the absence of a specific plan and intent for application of the appropriative waters to a beneficial use"); Bd. of Cty. Comm'rs v. United States, 891 P.2d 952, 959 (Colo. 1995) ("To prevent speculation, Vidler requires a firm contract or agency relationship with a proposed user who is committed to beneficially use the water.").
¶ 31 Here, Front Range argues its option contract with Aurora satisfies the doctrine, pointing to (1) the option contract's specificity, (2) Aurora's need for water that the replacement-plan water could fulfill, and (3) Aurora's cooperation with Front Range during the replacement plan's application process, including providing testimony on Front Range's behalf. Yet, like in Vidler, while Front Range's efforts with Aurora "possibly went beyond mere speculation," 594 P.2d at 569 (emphasis added), such evidence doesn't change the bottom line: Aurora doesn't have to exercise its option to purchase some or all of the replacement water. Under the option contract, Aurora might buy some of the replacement-plan water, or it might even buy all of the water. But then again, it might not. Thus, we agree with the district court that the option contract is speculative.
¶ 32 That's not to say, however, that we adopt a bright-line rule that option contracts can never satisfy the anti-speculation doctrine. Indeed, Front Range points us to many cases where applicants have used option contracts to support water applications that didn't violate the anti-speculation doctrine. But the cases to which it cites are distinguishable because they (1) were decided before this court held the anti-speculation doctrine applies to changes of water rights in High Plains, 120 P.3d at 714, or (2) involved the governmental entity exception to the *814 anti-speculation doctrine, which is not at issue here.
¶ 33 Even though we find those cases inapposite, we acknowledge that there may be circumstances involving an option contract that don't violate the anti-speculation doctrine, or at least don't merit granting summary judgment against the applicant under the doctrine. See, e.g., Wagner v. Allen, 688 P.2d 1102, 1105 (Colo. 1984) (involving an option contract that "would be exercised" provided that a water court entered a decree with certain terms). Front Range's option contract, however, is similar to the speculative option contract we struck down in Vidler. Therefore, Vidler controls and Front Range loses on this point.
¶ 34 Still, Front Range maintains that the evidence it submitted to the district court about the Pioneer Development created a genuine issue of material fact about its specific plan and intent to beneficially use plan water there. Again, we disagree.
¶ 35 Front Range correctly argues it doesn't need to prove a contractual relationship with an end-user for the replacement water if it has a specific plan and intent to beneficially use the water on lands or facilities it owns. See § 37-92-103(3)(a) ; Colo. Ground Water Comm'n v. N. Kiowa-Bijou Groundwater Mgmt. Dist., 77 P.3d 62, 78-79 (Colo. 2003). But even plans to use water on an applicant's own land must comply with the anti-speculation doctrine. E.g., Vermillion Ranch Ltd. P'ship v. Raftopoulos Bros., 2013 CO 41, ¶ 23, 307 P.3d 1056, 1062.
¶ 36 For instance, in Vermillion Ranch, a water court approved an applicant's conditional water storage right for commercial and industrial purposes, based, in part, on the applicant's testimony that wells "may be developed in the area" on some land it owned and that it owned mineral rights that "may be developed in the future." Id. at ¶ 36, 307 P.3d at 1065. The Vermillion Ranch court reversed, noting the mere fact that wells and mineral rights may be developed in the future, "without evidence of actual plans for such activities, does not demonstrate a non-speculative intent to actually put the water to beneficial use." Id. at ¶ 37, 307 P.3d at 1065.
¶ 37 Here, Front Range points to the following evidence of its specific plan and intent to use replacement-plan water on 650 acres it owns for the Pioneer Development: a zoning plat approving the Pioneer Planned Unit Development in Weld County; a number of project-funding and water-enterprise-activity agreements with special districts that will provide water and sanitation services for the Pioneer Development; and Front Range's motion opposing summary judgment at the district court, arguing replacement-plan water will be used in the Pioneer Development. But after looking at this evidence, we agree with the district court that nothing Front Range has provided creates a genuine issue of material fact. Nothing demonstrates how replacement-plan water would be used in the Pioneer Development. Indeed, Front Range highlights only its own opposition to summary judgment motion at the district court to make this point-and that is not enough to survive summary judgment because as we have previously held a " 'genuine issue' cannot be raised by counsel simply by means of argument, be it before the trial court or here." Sullivan v. Davis, 172 Colo. 490, 474 P.2d 218, 221 (1970).
¶ 38 Accordingly, we conclude Front Range's replacement plan violates the anti-speculation doctrine. Front Range also argues the district court erred by concluding the South Platte Water Rights could not be included as a source of replacement water in the plan because they were not decreed for replacement use in the Lost Creek Basin. But because we hold the district court properly dismissed the replacement plan in its entirety for violating the anti-speculation doctrine, we need not address the South Platte Water Rights.
¶ 39 We next turn to the sole issue in Defendants' cross-appeal: Should Defendants have received attorney fees?
B. Attorney Fees
¶ 40 After prevailing on summary judgment, Defendants moved for attorney fees. The district court denied Defendants' motion, noting that the issues raised were complex and thus Front Range's claims did not lack substantial justification. Defendants cross-appeal this issue, contending the district *815 court erred. We see no abuse of discretion.
¶ 41 A district court shall award attorney fees if, among other things, it finds an attorney or party brought or defended an action "that lacked substantial justification." § 13-17-102(2), (4), C.R.S. (2017). Under the statute, "lacked substantial justification" means "substantially frivolous, substantially groundless, or substantially vexatious." § 13-17-102(4).
¶ 42 Here, Defendants contend that Front Range's arguments about the anti-speculation doctrine were substantially frivolous, groundless, and vexatious. They point to Front Range's replacement-plan application and proposed decree, which (as noted above) appeared to concede that the anti-speculation doctrine applied to the replacement plan. But we perceive no abuse of discretion in denying fees. See Cherokee Metro. Dist. v. Upper Black Squirrel Creek Designated Ground Water Mgmt. Dist., 247 P.3d 567, 576 (Colo. 2011) (noting in the water law context that "a party's claims to pursue a creative, but ultimately wrong, legal theory to protect its significant rights are not substantially frivolous, groundless, or vexatious"). Despite Front Range's putative concessions regarding anti-speculation, we conclude the district court's decision to deny attorney fees because of the complexity of the issues was not manifestly arbitrary, unreasonable, or unfair. The district court acted within its discretion in concluding that Front Range's application for a replacement plan and its defenses against the anti-speculation doctrine did not lack substantial justification.
¶ 43 In short, we affirm the district court's decision not to award fees.
IV. Conclusion
¶ 44 We hold that the anti-speculation doctrine applies to replacement plans involving new appropriations or changes of water rights of designated ground water. Because Front Range could not demonstrate that it or Aurora would put the replacement-plan water to beneficial use, the district court did not err in granting Defendants' motion for summary judgment. We further conclude the district court did not abuse its discretion in denying Defendants' motion for attorney fees, because Front Range's claims did not lack substantial justification.
¶ 45 Therefore, we affirm.

Only Lost Creek Land and Cattle Company, Equus Farms, Inc., and Lost Creek Ground Water Management District filed the motion for attorney fees.

Only Lost Creek Land and Cattle Company, Equus Farms, Inc., and Lost Creek Ground Water Management District cross-appeal for attorney fees.

The parties appealed the following issues:
1. Whether the District Court erred as a matter of law by determining that Front Range's replacement plan application involved new appropriations and changes of water rights subject to the anti-speculation doctrine.
2. Whether the District Court erred as a matter of law by determining that, if the anti-speculation doctrine applied, Front Range's option agreement with the City of Aurora regarding use and operation of the Replacement Plan could not be used as evidence of a specific plan and intent to beneficially use water.
3. Whether the District Court erred by determining, on summary judgment, that no disputed issues of material fact existed regarding Front Range's specific plan and intent to beneficially use water under the replacement plan.
4. Whether the District Court erred as a matter of law by interpreting Commission Rule 5.6.1.A to require water rights be changed for use in replacement plans before the plan itself may be considered or approved.
5. Whether the District Court erred in not awarding Cross-Appellants their reasonable attorneys' fees.
Defendants Lost Creek Land and Cattle Company, Equus Farms, Inc., and Lost Creek Ground Water Management District filed briefs addressing all five issues. Defendants Northern Colorado Water Conservancy District and Irrigationists' Association, Water District 1, filed briefs addressing only Issue 4.

We do not hold that all replacement plans necessarily involve new appropriations or changes of water rights, which would trigger the anti-speculation doctrine.

At oral argument and in its briefing, Front Range has also discussed storage as a beneficial use. But the district court's orders did not discuss storage and the replacement plan proposed to withdraw the recharged water, not simply to store it. Accordingly, we do not address storage as a beneficial use in this opinion.