Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
November 23, 2020

**2020 CO 80**

**No. 19SA150,** *United Water & Sanitation Dist. v. Burlington Ditch Reservoir & Land Co.*—**Water Law—Intent as to Use of Water—Anti-Speculation Doctrine.**

The Water Court in Division 1 rejected United Water and Sanitation District's application for a conditional water right on the grounds that it failed to demonstrate a non-speculative intent. The water court reasoned that United did not qualify for the governmental planning exception to the anti-speculation doctrine and could not satisfy the anti-speculation standards applicable to private appropriators. The supreme court agrees. United, a one-acre special district incorporated in Elbert County, has no governmental or agency relationship with the end users proposed to be benefited by its appropriation in Weld County and is thus ineligible for the governmental planning exception. The contract that United offers to support its application is insufficiently definite and binding to satisfy the anti-speculation standards applicable to private appropriators. Accordingly, the supreme court affirms the judgment of the water court below.

**The Supreme Court of the State of Colorado**
2 East 14th Avenue • Denver, Colorado 80203

---

**2020 CO 80**

---

**Supreme Court Case No. 19SA150**
*Appeal from the District Court*
Weld County District Court, Water Division 1, Case No. 16CW3053
Honorable James F. Hartmann, Water Judge

---

Concerning the Application for Water Rights of United Water and Sanitation District, acting by and through the United Water Acquisition Project Water Activity Enterprise in Adams, Arapahoe, Denver, Douglas, Elbert, Morgan, and Weld Counties.

**Applicant-Appellant:**
United Water and Sanitation District, acting by and through the United Water Acquisition Project Water Activity Enterprise,

v.

**Opposers-Appellees:**
Burlington Ditch Reservoir and Land Company; Centennial Water and Sanitation District; City of Aurora; City of Boulder; City and County of Denver, acting by and through its Board of Water Commissioners; City of Englewood; City of Brighton; City of Thornton; Edmundson Land, LLC; The Farmers Reservoir and Irrigation Company; Fort Morgan Reservoir & Irrigation Company; Henrylyn Irrigation District; Irrigationists' Association, Water District 1; Lower Latham Reservoir Company; Platte Valley Irrigation Company; Public Service Company of Colorado; South Adams County Water and Sanitation District; Todd Creek Village Metropolitan District; Town of Lochbuie; and The Board of County Commissioners of the County of Weld, State of Colorado,

and Concerning

**Appellee Pursuant to C.A.R. 1(e):**
Corey DeAngelis, Division Engineer, Water Division 1

**Judgment Affirmed**
*en banc*
November 23, 2020

**Attorneys for Applicant-Appellant:**
Law Offices of Tod J. Smith, LLC
Tod J. Smith
> *Boulder, Colorado*

Ann Rhodes, LLC
Ann M. Rhodes
> *Boulder, Colorado*

**Attorneys for Opposer-Appellee Burlington Ditch Reservoir and Land Company:**
Lyons Gaddis Kahn Hall Jeffers Dworak & Grant, P.C.
Scott E. Holwick
Kara N. Godbehere
> *Longmont, Colorado*

**Attorneys for Opposer-Appellee City of Aurora:**
Brownstein Hyatt Farber Schreck, LLP
Steven O. Sims
Dulcinea Z. Hanuschak
Benjamin J. Saver
> *Denver, Colorado*

City of Aurora
Stephanie Neitzel
> *Aurora, Colorado*

**Attorneys for Opposer-Appellee The Farmers Reservoir and Irrigation Company:**
Fairfield and Woods, P.C.
Joseph B. Dischinger
Beth Ann J. Parsons
Beth Van Vurst

2

Dean C. Hirt, III
*Denver, Colorado*

**Attorneys for Appellee Pursuant to C.A.R. 1(e):**
Philip J. Weiser, Attorney General
Paul L. Benington, First Assistant Attorney General
Philip E. Lopez, Senior Assistant Attorney General
*Denver, Colorado*

**Attorneys for Amicus Curiae City of Colorado Springs:**
City Attorney's Office
Michael J. Gustafson
*Colorado Springs, Colorado*

Hill & Robbins, P.C.
David W. Robbins
Matthew A. Montgomery
*Denver, Colorado*

**Attorneys for Amicus Curiae City and County of Denver:**
Jessica R. Brody, General Counsel
Casey S. Funk
Daniel J. Arnold
James M. Wittler
*Denver, Colorado*

No appearance on behalf of: Centennial Water and Sanitation District; City of Boulder; City of Englewood; City of Brighton; City of Thornton; Edmundson Land, LLC; Fort Morgan Reservoir & Irrigation Company; Henrylyn Irrigation District; Irrigationists' Association, Water District 1; Lower Latham Reservoir Company; Platte Valley Irrigation Company; Public Service Company of Colorado; South Adams County Water and Sanitation District; Todd Creek Village Metropolitan District; Town of Lochbuie; and The Board of County Commissioners of the County of Weld, State of Colorado.

**JUSTICE MÁRQUEZ** delivered the Opinion of the Court.

¶1 This appeal arises out of an application for a conditional water storage right filed by United Water and Sanitation District, a special water district formed in Elbert County, acting through the United Water Acquisition Project Water Activity Enterprise ("United"). Since 2013, United has been seeking to secure various water rights in Weld County. United's original applications—which sought, in part, conditional water storage rights for two reservoirs, conditional and absolute storage rights for a third reservoir, and conditional recharge rights—were consolidated in a set of four cases. In response to a motion for determination of questions of law from opposer Farmers Reservoir and Irrigation Company ("FRICO") in the consolidated cases, the District Court for Water Division 1 ("water court") concluded that United's applications failed to demonstrate non-speculative intent to appropriate water. In response to this ruling, United withdrew its applications in the consolidated cases and, a week later, filed a new application in Case No. 16CW3053 for a conditional water storage right that is the subject of this appeal.[1] Relevant here, United seeks to appropriate water for use in a proposed residential development in another county. In support of its new

---

[1] United filed new applications in separate cases for the other conditional water rights sought in the initial applications.

4

application for a conditional storage right, United offered a new, purportedly binding contract with the landowners of the proposed development. United also claimed for the first time that its status as a special district qualifies it for the governmental planning exception to the anti-speculation doctrine.

¶2 After opposer FRICO filed another motion for determination of questions of law, the water court concluded that United's new application likewise failed to demonstrate non-speculative intent to appropriate water. The water court found that United was acting as a water broker to sell to third parties for their use, and not as a governmental agency seeking to procure water to serve its own municipal customers. Consequently, the water court held, United did not qualify for the governmental planning exception to the anti-speculation doctrine. Applying instead the anti-speculation standards applicable to private appropriators, the court held that United's application failed because it did not have a binding contract or an agency relationship with the end users of the water. United now challenges the water court's ruling denying in part its application for conditional water rights.

¶3 We conclude that United is ineligible for the governmental planning exception to the anti-speculation doctrine because it has no governmental agency relationship with the end users proposed to be benefited by its appropriation. We

further conclude that the contract between United and the end users is insufficiently binding to satisfy the anti-speculation standards for private appropriators under *Colorado River Water Conservation District v. Vidler Tunnel Water Co.*, 594 P.2d 566 (Colo. 1979). Accordingly, we affirm the judgment of the water court.

## I. Facts and Procedural History

¶4 United is a special district formed under Title 32 of the Colorado Revised Statutes with territorial boundaries encompassing approximately one acre of land in Elbert County. There are no residents within its territorial boundaries, and United's service plan specifies that it was not formed for the purpose of providing water to individual users. Instead, according to a prior version of its website, United was formed to serve as "a water district for other water districts." *About United Water and Sanitation District*, United Water and Sanitation District (archived version of the website as of Apr. 2, 2016), https://web.archive.org/web/20160402063546/http://unitedwaterdistrict.com /about.html (last visited Oct. 28, 2020).[2]

---

[2] In a since-deleted passage on the "Frequently Asked Questions" portion of its website, United explained:

¶5 In Case No. 13CW3182, United filed an application for a conditional water storage right for the (as yet unconstructed) Highlands Reservoir, proposing to provide some of the water to the Highlands Development, a 665-acre proposed residential development near Lochbuie in Weld County. The application was consolidated with three other applications submitted by United in cases 13CW3180, 13CW3183, and 14CW3173 for conditional and absolute storage rights and conditional recharge rights throughout Weld County. A number of parties opposed these applications, including FRICO.

¶6 In February 2016, FRICO filed a motion for determination of questions of law under C.R.C.P. 56(h) in the consolidated cases, asking the water court to determine whether United qualified for the governmental planning exception to

------

> Why did United organize as a special district, rather than as a private company?
>
> One of the services United provides is the legal transfer of water rights from an agricultural designation to a municipal designation. Colorado's water laws significantly restrict a private company's ability to adjudicate these water rights, so United sought and received designation as a special district.

*Frequently Asked Questions*, United Water and Sanitation District (archived version of the website as of Apr. 2, 2016), https://web.archive.org/web/20160402064816/http://unitedwaterdistrict.com/aboutfaqs.html (last visited Oct. 28, 2020).

the anti-speculation doctrine and, if not, whether United had satisfied the anti-speculation standards applicable to private parties. In its response to this motion, United stated that it "has not asserted that [the governmental planning] exception applies and . . . does not intend to make such an assertion." Instead, United argued that its applications "meet the private party standards of the anti-speculation doctrine."

¶7 In April 2016, the water court issued an order on FRICO's motion. Because United did not assert the governmental planning exception, the court declined to address that issue. The water court concluded that United could not satisfy the anti-speculation standards applicable to private parties because it did not have binding contractual commitments or an agency relationship with the end users of the water United sought to appropriate at the time its applications were filed. Following this ruling, United withdrew its applications in the consolidated cases.

¶8 Six days after the water court's ruling, United entered into a water supply agreement with TRS Equities, L.L.C.; Highland Equities, L.L.C.; Weld Kil 270, L.L.C.; and the Damiano Family Trust (collectively, the "Highland Owners") to provide water to the Highlands Development. The next day, armed with this agreement, United filed the present application in Case No. 16CW3053, again

8

seeking a conditional water storage right in the Highlands Reservoir to provide the Highland Owners with water for the Highland Development.[3]

¶9 FRICO and others again opposed United's application.[4] In January 2019, FRICO filed a motion for determination of questions of law and partial summary judgment. Relevant here, FRICO asked the court to determine that United must satisfy the anti-speculation doctrine standards applicable to private appropriators to obtain a conditional storage right decree in the Highland Reservoir. FRICO also asked the court to find that United's water supply contracts are insufficiently

---

[3] United's application in 16CW3053 sought additional uses for the conditional storage right, namely, for irrigation of a fifteen-acre parcel ("DeSanti Parcel") owned by United, and as a source of water to meet contractual obligations to East Cherry Creek Valley Water and Sanitation District ("ECCV") and Arapahoe County Water and Wastewater Authority ("ACWWA"). The application also sought conditional appropriative rights of exchange. United later dismissed all of these claims. Because they are not at issue in this appeal, we do not discuss them in detail in this opinion.

[4] Burlington Ditch, Reservoir and Land Company; Centennial Water and Sanitation District; City of Aurora; City of Boulder; City of Brighton; City and County of Denver, acting by and through its Board of Water Commissioners; City of Englewood; City of Thornton; Edmundson Land, LLC; FRICO; Fort Morgan Reservoir and Irrigation Company; Henrylyn Irrigation District; Irrigationists' Association, Water District 1; Lower Latham Reservoir Company; Platte Valley Irrigation Company; Public Service Company of Colorado; Riverside Irrigation District and Riverside Reservoir and Land Company; South Adams County Water and Sanitation District; Todd Creek Village Metropolitan District; Town of Lochbuie; and The Board of County Commissioners of the County of Weld, State of Colorado all filed statements of opposition.

binding to form a non-speculative basis for appropriation. In its response, United asserted for the first time that it qualifies for the governmental planning exception to the anti-speculation doctrine. In the alternative, United argued that it met the anti-speculation standards for private parties.

¶10 In March 2019, the water court issued an order on FRICO's motion. The court acknowledged that United was formed as a water and sanitation district and may meet the definition of a quasi-government entity for purposes of some activities. But in this instance, the court reasoned, United is acting as a water broker to obtain water to sell to third parties for their use; it is not procuring water as a governmental agency to serve its own municipal customers. Thus, the court concluded, United does not qualify for the governmental planning exception. Applying the anti-speculation criteria applicable to private appropriators, the water court then found that the contract between United and the Highland Owners "is non-binding as to several essential terms," most notably in that "the Highland Owners are not obligated to purchase any amount of water from United." Accordingly, because United lacked a firm contractual commitment with the Highland Owners, the court concluded that the claimed conditional storage right was speculative. The court entered summary judgment for FRICO and against United as to this claimed use of the conditional storage right.

¶11 United moved for reconsideration, which the water court denied. Thereafter, the court granted United's motion to dismiss its remaining claims and entered final judgment. United appeals the water court's judgment directly to this court pursuant to section 13-4-102(1)(d), C.R.S. (2020).

## II. Analysis

### A. Standard of Review

¶12 "Whether an applicant has met the legal standards for a conditional appropriation presents mixed questions of law and fact that we review de novo." *Pagosa Area Water & Sanitation Dist. v. Trout Unlimited*, 219 P.3d 774, 779 (Colo. 2009) (*Pagosa II*). However, "[w]e defer to the water court's findings of fact unless the evidence is wholly insufficient to support those determinations." *Id.*

### B. Legal Principles

### 1. Conditional Water Rights

¶13 A conditional water right is "a right to perfect a water right with a certain priority upon the completion with reasonable diligence of the appropriation upon which such water right is to be based." § 37-92-103(6), C.R.S. (2020). "A conditional water right preserves an applicant's position in the priority system while the applicant takes the necessary steps (such as obtaining financing, complying with regulatory and access requirements, and completing engineering,

etc.) to put the appropriated water to beneficial use." *Vermillion Ranch Ltd. P'ship v. Raftopoulos Bros.*, 2013 CO 41, ¶ 32, 307 P.3d 1056, 1064.

¶14 To obtain a conditional water right, an applicant must demonstrate that: "(1) it has taken a 'first step,' which includes an intent to appropriate the water and an overt act manifesting such intent; (2) its intent is not based on a speculative sale or transfer of the water to be appropriated; and (3) there is a substantial probability that the applicant 'can and will' complete the appropriation with diligence and within a reasonable time." *Id.* at ¶ 33, 307 P.3d at 1064.

¶15 At issue in this case is whether United's application for a conditional water right satisfies the second prong of this test—demonstration of a non-speculative intent to appropriate. For the reasons set forth below, we agree with the water court's determination that it does not.

## 2. The Anti-Speculation Doctrine

¶16 The right to appropriate water for beneficial uses is enshrined in the constitution. Colo. Const. art. XVI, § 6; *Wheeler v. N. Colo. Irrigating Co.*, 17 P. 487, 489 (Colo. 1888).[5] But the constitution guarantees only "a right to appropriate, not

[5] Water is the property of the public. Colo. Const. art. XVI, § 5. Thus, one cannot claim a right to *own* water, but instead may only claim a right to *use* water. *Kobobel v. State, Dep't of Nat. Res.*, 249 P.3d 1127, 1134 (Colo. 2011).

a right to speculate." *Vidler*, 594 P.2d at 568. In other words, "[t]he right to appropriate is for use, not merely for profit. . . . To recognize conditional decrees grounded on no interest beyond a desire to obtain water for sale would as a practical matter discourage those who have need and use for the water from developing it." *Id.* This fundamental principle is commonly referred to as the "anti-speculation doctrine."

¶17 We outlined the contours of the anti-speculation doctrine in *Vidler*. In doing so, "we did not articulate a new legal requirement in that case, but rather merely applied longstanding principles of Colorado water law." *City of Thornton v. Bijou Irrigation Co.*, 926 P.2d 1, 37 (Colo. 1996). Indeed, for well over a century, we have made clear that the anti-speculation doctrine is best understood as a component of the constitutional beneficial use requirement itself. *See High Plains A & M, LLC v. Se. Colo. Water Conservancy Dist.*, 120 P.3d 710, 714 (Colo. 2005), *as modified on denial of reh'g* (Oct. 11, 2005) ("[T]he anti-speculation doctrine is rooted in the requirement that an appropriation of Colorado's water resource must be for an actual beneficial use."); *Combs v. Agric. Ditch Co.*, 28 P. 966, 968 (Colo. 1892) ("The constitution provides that the water of natural streams may be diverted to beneficial use; but the privilege of diversion is granted only for uses truly beneficial, and not for purposes of speculation.").

¶18 Anti-speculation challenges generally arise when a party seeks to appropriate water that ultimately will be used by third parties. To satisfy the anti-speculation doctrine under these circumstances, the party seeking a conditional water right must show that it has a "firm contractual commitment" or an "agency relationship justifying its claim to represent those whose future needs are asserted." *Vidler*, 594 P.2d at 568–69. Contracts between private parties generally fail to satisfy the *Vidler* standards if they do not require the end user "to purchase or use any specific quantity of water." *Raftopoulos*, ¶ 38, 307 P.3d at 1065; *see also Front Range Res., LLC v. Colo. Ground Water Comm'n*, 2018 CO 25, ¶ 31, 415 P.3d 807, 813.

### 3. The Governmental Planning Exception

¶19 The beneficial use and anti-speculation analysis, however, is "not as simple" when applied to a governmental entity that is seeking to "assure an adequate supply to the public which it serves." *See City & Cnty. of Denver v. Sheriff*, 96 P.2d 836, 841 (Colo. 1939). A municipality's population may increase in a relatively short period of time, and its boundaries may expand. Accordingly, "it is not speculation but the highest prudence on the part of the city to obtain appropriations of water that will satisfy" these needs. *Id.*

¶20 Recognizing government entities' need for flexibility in planning for anticipated growth, we have held that the anti-speculation standards applied to private parties in *Vidler* do not "apply with equal force to municipalities." *Bijou*, 926 P.2d at 38. While the governmental planning exception[6] to the anti-speculation doctrine does not "completely immunize municipal applicants from speculation challenges," it does allow a government entity to obtain conditional water rights based on its projected future needs, so long as its reasonably anticipated requirements are based on substantiated projections of future growth. *Id.* at 38–39; *see also City & Cnty. of Denver v. N. Colo. Water Conservancy Dist.*, 276 P.2d 992, 997 (1954) (*Blue River*) ("We cannot hold that a city more than others is entitled to decree for water beyond its own needs. However, . . . when appropriations are sought by a growing city, regard should be given to its reasonably anticipated requirements.").

---

[6] This exception is also sometimes referred to as the "limited governmental agency exception," *Pagosa II*, 219 P.3d at 779, the "limited governmental entity water supply exception," *Pagosa Area Water & Sanitation Dist. v. Trout Unlimited*, 170 P.3d 307, 317 n.8 (Colo. 2007), *as modified* (Nov. 13, 2007) (*Pagosa I*), the "great and growing cities doctrine," *id.*, and the "municipal planning exception," *Bijou*, 926 P.2d at 40.

## 4. Codification of the Doctrine and the Exception

¶21 In 1979, consistent with these constitutionally derived principles, the General Assembly amended the definition of "appropriation" in the Water Rights Determination and Administration Act of 1969 to codify both the anti-speculation standards articulated in *Vidler* and the governmental planning exception discussed in *Sherriff* and *Blue River*:

> (3)(a) "Appropriation" means the application of a specified portion of the waters of the state to a beneficial use pursuant to the procedures prescribed by law; but no appropriation of water, either absolute or conditional, shall be held to occur when the proposed appropriation is based upon the speculative sale or transfer of the appropriative rights to persons not parties to the proposed appropriation, as evidenced by either of the following:
>
> (I) The purported appropriator of record does not have either a legally vested interest or a reasonable expectation of procuring such interest in the lands or facilities to be served by such appropriation, unless such appropriator is a governmental agency or an agent in fact for the persons proposed to be benefited by such appropriation.
>
> (II) The purported appropriator of record does not have a specific plan and intent to divert, store, or otherwise capture, possess, and control a specific quantity of water for specific beneficial uses.

Ch. 346, sec. 1, § 37-92-103(3)(a), 1979 Colo. Sess. Laws 1366, 1368 (codified at § 37-92-103(3)(a), C.R.S. (2020)); *Bijou*, 926 P.2d at 38.

¶22 Section 37-92-103(3)(a) establishes the *Vidler* test as the default anti-speculation rule for most appropriators. If, however, a party is eligible for the governmental planning exception, a more flexible rule applies and the

government agency appropriator may overcome a speculation challenge by showing that the amount conditionally appropriated is necessary to satisfy the government agency's reasonably anticipated requirements based on substantiated projections of its future population growth. *See Upper Yampa Water Conservancy Dist. v. Dequine Fam. L.L.C.*, 249 P.3d 794, 798 (Colo. 2011).

¶23 To qualify for the codified governmental planning exception, an appropriator must be a "governmental agency or an agent in fact for the persons proposed to be benefited by such appropriation." § 37-92-103(3)(a)(I). The parties here disagree as to the proper reading of this provision. The Division Engineer contends that the phrase "for the persons proposed to be benefited" modifies both "governmental agency" and "agent in fact," so the exception applies only to a "governmental agency . . . for the persons proposed to be benefited." That is, a government entity must have a governmental agency relationship with the intended end users of the water in order to qualify for the exception. By contrast, United argues that "for the persons proposed to be benefited" modifies only "agent in fact," and thus the exception should be broadly interpreted to apply to any "governmental agency," period. We agree with the Division Engineer's interpretation.

17

¶24 We have previously held that the governmental planning exception codified by the General Assembly in section 37-92-103(3)(a)(I) "must be read as consistent with the scope of the exception recognized for municipalities in those decisions underlying *Vidler*, such as *Sheriff* and *Blue River*." *Bijou*, 926 P.2d at 38–39. In both of those underlying cases, we recognized the exception only with regard to government entities planning for the needs of their own populations.

¶25 In *Sheriff*, the City of Denver appealed a trial court decision granting certain water rights but applying conditions limiting the city's ability to lease or sell excess water under those rights in the event that the water was not necessary to meet the city's immediate needs. 96 P.2d at 838–40. This court struck down those limitations. A city like Denver, we explained, needs "flexibility" in order to "assure an adequate supply *to the public which it serves*." *Id.* at 841 (emphasis added). Accordingly, a practice that may have constituted speculation for a private party was, when carried out by a governmental entity, simply an exercise of "managerial judgment" necessary to the "furnishing of an adequate supply of water to" the city's population. *Id.* at 840.

¶26 In *Blue River*, Denver sought a decree for conditional direct flow water rights from the Blue River. 276 P.2d at 995. Several parties objected, arguing that, because Denver had sufficient water for its current needs, a decree based solely on

future needs would be speculative. *Id.* at 997. This court disagreed, explaining that, while a city is not "entitled to [a] decree for water *beyond its own needs*," courts should account for the future needs of a city based on its "reasonably anticipated requirements." *Id.* (emphasis added).

¶27 Our subsequent opinions similarly have limited the governmental planning exception to municipalities and other agencies responsible for supplying water to their individual users. *See Bijou*, 926 P.2d at 38; *see also Upper Yampa*, 249 P.3d at 798 (reaffirming that section 37-92-103(3)(a)(I) "perpetuat[es] the planning flexibility previously allowed government agencies with respect to the future water needs *of their populations*" (emphasis added)); *Pagosa Area Water & Sanitation Dist. v. Trout Unlimited*, 170 P.3d 307, 314 (Colo. 2007), *as modified* (Nov. 13, 2007) (*Pagosa I*) ("[A] governmental water supply agency has a unique need for planning flexibility because it must plan for the reasonably anticipated water needs *of its populace . . . .*" (emphasis added)).

¶28 By contrast, we have recognized that the governmental planning exception does not apply where a government agency is "acting in the capacity of a water supplier on the open market rather than as a governmental entity seeking to ensure future water supplies for its citizens." *Bijou*, 926 P.2d at 40. This interpretation of the exception is consistent with one of the basic goals of the

19

beneficial use requirement and the anti-speculation doctrine: preventing parties from monopolizing water "for personal profit rather than for beneficial use." *Vidler*, 594 P.2d at 568.

¶29 The plain text of the codified governmental planning exception incorporates these principles. The exception applies only to a "governmental agency . . . *for the persons proposed to be benefited*" by the appropriation at issue. *See* § 37-92-103(3)(a)(I) (emphasis added). In other words, the exception applies only where a government agency is seeking to appropriate water on behalf of end users with whom it has a governmental agency relationship.

## III. Application

### A. United Does Not Qualify for the Governmental Planning Exception

¶30 As a special district, United constitutes a "quasi-municipal corporation and political subdivision," *see* § 32-1-103(20), C.R.S. (2020), and thus falls within the meaning of "governmental agency" for purposes of section 37-92-103(3)(a)(I). But as explained above, this determination does not end the governmental planning exception inquiry. To qualify for the exception, United must demonstrate that it has a governmental agency relationship with the end users proposed to be benefited by the water it seeks to appropriate in Weld County. Because it does not have such a relationship, United does not qualify for the exception.

20

¶31 United is organized as a one-acre, unpopulated special district in Elbert County, three counties away from the proposed Highland Development in Weld County. Although United purports to have a statewide service area,[7] its service plan clarifies that United does not intend to provide water to individual users. Moreover, United has not indicated that it plans to expand its territorial boundaries to encompass the proposed Highland Development or begin providing water to individual end users within that area. In the absence of any such connection to end users, United cannot demonstrate that it has a governmental agency relationship to the persons proposed to be benefited by its conditional appropriation.[8] Rather, as the water court correctly found, United is

---

[7] The Division Engineer argues that United's claimed state-wide service area is inconsistent with those provisions of the Special Districts Act designed to allow counties a degree of control over special districts operating within their borders. *See, e.g.*, § 32-1-202(1)(a), C.R.S. (2020) (requiring special districts to "submit a service plan to the board of county commissioners of each county that has territory included within the boundaries of the proposed special district"). Because this issue is not squarely before us and is not necessary for resolution of the governmental planning exception inquiry, we decline to address the Engineer's argument.

[8] United's reliance on the Special Districts Act to assert otherwise is unavailing. That act authorizes special water districts "[t]o acquire water rights . . . within and without the district." § 32-1-1006(1)(e), C.R.S. (2020). But the fact that a special district is authorized to acquire rights outside of its boundaries does not speak to which anti-speculation standards should apply when it attempts to do so.

21

acting in this instance as a water broker to sell water to end users, not as a government agency serving its own municipal customers. Thus, for purposes of the conditional storage right it seeks here, United is ineligible for the governmental planning exception and must satisfy the anti-speculation standards applicable to private parties.

### B. United's Application Does Not Satisfy the Anti-Speculation Standards for Private Parties under *Vidler*

¶32 To satisfy the anti-speculation standards applicable to private appropriators, United must demonstrate that it has a "contract or agency relationship justifying its claim to represent those whose future needs are asserted." *Vidler*, 594 P.2d at 569. United does not allege that it has an agency relationship with the Highland Owners. Accordingly, our inquiry is limited to determining whether United has "firm contractual commitments for the use of water." *Bijou*, 926 P.2d at 37.

¶33 The water court concluded that the April 2016 water supply agreement between United and the Highland Owners does not satisfy the anti-speculation doctrine because "there is no provision in the contract that requires the Highland Owners to purchase any amount of water from United." United disagrees, pointing to provisions that it claims render the contract binding.

¶34 The recitals portion of the contract states that the agreement is intended to facilitate "the supply of water to the Highlands Property based upon the estimated demand for the Highlands Property under various development scenarios." To this end, various sections of the contract discuss the facilities to be used to provide water, ongoing applications for water rights, and various price and quantity estimates.

¶35 United focuses on three sections that it argues render the contract binding and non-speculative: sections 4.5, 4.6, and 5.2. None of those provisions, however, require the Highland Owners to purchase any water. Section 4.5 provides approximations of the Highland Owners' water demands but concedes that these numbers are "conceptual and estimates only." Section 4.6 lists the *maximum* amount of water available to the Highland Owners but does not list any *minimum* purchase amount. And while section 5.2 sets out a mechanism for determining the purchase price of the water, it does not obligate the Highland Owners to purchase any water at the determined price. Thus, none of these provisions, considered individually or together, rise to the level of a firm contractual commitment for purposes of the anti-speculation doctrine.

¶36 The contract at issue here is similar to those we rejected as speculative in *Vidler* and *Front Range*. In *Vidler*, we held that a contract between the appropriator

23

and the City of Golden was speculative because the city "ha[d] not committed itself beyond an option which it may choose not to exercise." 594 P.2d at 568. Similarly, in *Front Range*, we held that a contract between the appropriator and the City of Aurora was speculative because it did not require Aurora to commit to purchasing any amount of water. ¶ 31, 415 P.3d at 813 ("Aurora *might* buy some of the replacement-plan water, or it might even buy all of the water. But then again, it might not. Thus, we agree with the district court that the option contract is speculative.").[9] The same is true of the water supply agreement here between United and the Highland Owners. The contract involves no commitment from the Highland Owners to purchase any water and is thus insufficient to satisfy *Vidler*'s "firm contractual commitments" requirement.

## C. We Decline to Address United's Ambiguity Argument

¶37 Finally, United argues that the water court should not have granted summary judgment in favor of FRICO because the contract between United and the Highland Owners is ambiguous. Generally, "issues not raised in or decided by a lower court will not be addressed for the first time on appeal." *Melat*,

---

[9] As we did in *Front Range*, we again decline to adopt a bright-line rule that option contracts can never satisfy the anti-speculation doctrine. *See id.* at ¶ 32.

*Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 2012 CO 61, ¶ 18, 287 P.3d 842, 847. United cites to two motions filed in the water court that it alleges preserved its ambiguity argument. However, inspection of those motions reveals that United never raised the issue of ambiguity below. Indeed, even in its briefing in this court, United continues to argue that "the Contract is clear." Simply providing an alternative interpretation of contractual terms is not the same as arguing that the contract is itself ambiguous. Accordingly, because it was never raised in the water court, we decline to consider this issue for the first time on appeal.

## IV. Conclusion

¶38 The governmental planning exception to the anti-speculation doctrine is intended to give government entities the flexibility to plan for the future water needs of the populace the government entity serves where those needs are based on substantiated projections of future growth. It does not give carte blanche to appropriate water for speculative purposes nor does it apply where a government entity acts as a water supplier on the open market. United has not demonstrated that it seeks the conditional storage right at issue here in order to serve end users with whom it has a government agency relationship, and thus it does not qualify for the governmental planning exception to the anti-speculation doctrine.

Moreover, United has failed to satisfy the applicable anti-speculation standards for private appropriators. Accordingly, we affirm the judgment of the water court.